IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF ALABAMA, ABC COMPANIES 1-100, JOHN DOES 1-100<br><br>Defendants. | Civ. Action No.: 2-23-cv-5132-KBH |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
Tel: (215) 995-2800
Fax: (215) 995-2801
*Attorneys for Defendant*

On the Brief:

    Jennifer Pacicco, Esq.
    Jocelyn A. Merced, Esq. (*admitted pro hac vice*)
    Timothy A. Palmer, Esq. *(pro hac vice to be filed)*

**INTRODUCTION**

Defendant Blue Cross Blue Shield of Alabama ("BCBSAL" or "Defendant") respectfully submits this reply brief in further support of its motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF FAILED TO FULFILL ITS OBLIGATION UNDER FRCP RULE 11 TO CONDUCT A REASONABLE INQUIRY INTO THE INSURANCE PLANS WHICH FORM THE BASIS OF THE STATE LAW CLAIMS**

In opposition to BCBSAL's motion to dismiss, Plaintiff alleges that BCBSAL's motion should be denied because BCBSAL has failed to prove that the majority of the insurance contracts at issue in this case are governed by ERISA. Plaintiff's argument wholly ignores the pleading obligations under FRCP Rule 11.

Rule 11(b) provides that when a party signs a pleading, the attorney or party certifies that to the best of their knowledge or belief, and based on reasonable inquiry, that the pleadings are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or, if specifically so intended, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3). An attorney has an affirmative duty under Rule 11 to make a reasonable inquiry into the facts and the law. *Gary v. Braddock Cemetery,* 2008 WL 3914269, at *4 (W.D. Pa. Aug. 25, 2008) ("An 'empty head, pure heart' excuse cannot be used by the accused party as a justification for filing a frivolous lawsuit.").

Genesis' Amended Complaint seeks to recover alleged underpayments for laboratory testing services rendered on behalf of hundreds of patients ("the Participants") for services performed on the Participants between 2016 and 2021. More specifically, Genesis alleges that

1

BCBSAL "improperly refused to pay (or underpaid) Plaintiff hundreds of thousands of dollars for services it rendered to numerous of Defendant's subscribers and/or members for numerous pretextual reasons, including purported, (a) lack of adequate claim information provided by Plaintiff; (b) untimely filing of claims; (c) lack of coverage by the subscribers/members for the services provided; and/or (d) failure to meet conditions of coverage. (*See* D.E. 12 at ¶4).

Genesis asserts these claims in a derivative capacity under a purported assignment from the Participants. Genesis cannot simply "dispute" BCBSAL's sworn certification which attests that the majority of the claims that it submitted to BCBSAL were governed by ERISA plans. (*See* Certification of Janene Parker at ¶5, D.E. 15-1). As a purported assignee of benefits, Genesis stands in the shoes of the Participants themselves. Prior to filing the Amended Complaint, Genesis had an independent obligation to identify and review each of the insurance contracts upon which their alleged underpayment claims are based and determine whether any of their underpayment claims could properly be asserted under state common law, or whether the claims were subject to ERISA governed plans. Because the vast majority of Plaintiff's state law claims asserted in Counts I through IV are all founded upon the terms and directly relate to the ERISA Plans at issue, these claims are preempted and must be dismissed as a matter of law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (breach of contract, breach of duty and fraud preempted by ERISA); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (breach of contract and bad-faith insurance practices preempted under ERISA); *Arsdel v. Liberty Life Assurance Co. of* Boston, 175 F.Supp.3d 464, 486 (E.D.Pa. 2016)(breach of contract and bad faith claim preempted by ERISA). Rather than exercising the due diligence required by their obligations under Rule 11, Genesis seems to look to the defendant and to this court to determine which of the plans they stake their claims upon are ERISA governed plans and which are not. The plan documents necessary for plaintiff to properly

and in good faith plead this case are within the possession of Genesis or the assignors it purports to represent. Failing a good faith inquiry by plaintiff as to whether the plans at issue are even subject to state law regulation, Defendant's showing should prevail and dismissal should be granted.

**POINT II**

**GENESIS LACKS STANDING TO PURSUE THE CLAIMS ASSERTED IN THE AMENDED COMPLAINT**

Defendant's motion for dismissal and principle brief establish that all of the benefit plans at issue in the present case contain prohibitions against assignment of benefits defeating plaintiff's standing to bring this suit under the well-established law of the this circuit.

In an effort to overcome this fatal deficiency in its case, Genesis urges this court to adopt a novel and, to date, unheard of interpretation of *Lakeview Neurocare Pennsylvania, Inc. v. Independence Blue Cross* 2017 WL 4418420 (M.D. Penn. 2017). Lakeview is an unpublished magistrate judge opinion without a single citing reference in the seven years since it was filed. In *Lakeview*, patient JA was admitted to the plaintiff's facility for therapeutic residential counseling. The insurer, Independence Blue Cross ("IBC") certified JA's treatment by Lakeview every seven days for the 18 months of JA's treatment. When IBC did not pay the entire amount of the billings Lakeview submitted, Lakeview sued for breach of contract and IBC moved to dismiss alleging that Lakeview lacked standing due to a non-assignment clause in JA's insurance policy. Lakeview opposed the motion to dismiss relying on principles from Pennsylvania law interpreting property and casualty insurance that a "post-loss" assignment of benefits is valid notwithstanding an anti-assignment provision in the insurance contract. Specifically, Lakeview contended that "because the assignment of benefits was post-loss—after JA received care, IBC was billed, and IBC failed

3

to pay—the non-assignment clause was not enforceable." *Id.* at *4. Accepting Lakeview's allegations as true, the court denied IBC's motion to dismiss. *Id.* at *5.

The allegations in plaintiff's first amended complaint demonstrate that the "assignments" at issue in the present case are anything but the sort of "post-loss" assignment central to the court's holding in *Lakeview*. Genesis is a medical testing laboratory that conducts various tests, including Covid 19 testing, on specimens collected by medical providers and submitted to Genesis. (First Amended Complaint, ¶11, D.E 12). The purported assignment of benefits for each insured is contained in a document Genesis refers to as a "requisition for laboratory testing services" that Genesis alleges are submitted "on behalf of Defendant's insureds." (*Id*. at 12, D.E. 12). As the name of the form indicates, the requisition for laboratory testing services is preliminary to performance of the testing by Genesis. Genesis alleges the assignment of benefits in the requisition for testing services is the basis for Genesis's subsequent "tendering of [l]aboratory [t]esting [s]ervices to each of defendant's subscribers/members." (*Id*. at ¶14, D.E.12)

Unlike the provider in *Lakeview* where the assignment of benefits was obtained *after* the patients had received care, *after* the insurer was billed, and *after* the insurer had failed to pay, Genesis's purported assignments of benefits in this case were obtained *before* any of those events and *before* Plaintiff even tendered the testing services at issue. Far from being a post-loss assignment, the purported assignments of benefits in this case are precisely the sort of boilerplate assignments executed at the inception of the services that are prohibited by the valid anti-assignment provisions of the benefit plans.

Genesis's memorandum in opposition to Defendant's motion to dismiss disingenuously suggests that the facts in the instant case "are similar to the facts in *Lakeview*" because the assignment occurred from the time the insured required the diagnostic testing and therefore is

4

"post-loss." Under the interpretation of *Lakeview* Genesis urges, everything that occurs after the first few sneezes or handful of coughs that might prompt someone to be Covid tested is presumably a "post-loss" event. However, in reality an insured cannot be said to have suffered a "loss" under a health insurance policy relative to Genesis's services unless and until the patient accepts Genesis's tender of services, medically necessary testing is rendered, a claim for Genesis's services is submitted, and that claim is denied in whole or in part. Moreover, in ERISA-regulated plans (which represent the vast majority of plans at issue in this case), the law further requires that the insured's administrative remedies under the plan must be exhausted allowing an employer or its insurer opportunity to correct any error in processing the claim before the matter is a justiciable loss. The reading of *Lakeview* advanced by the Plaintiff comports with neither sound legal reasoning nor common sense. An assignment of benefits executed prior to the testing services even being tendered cannot be logically considered a post-loss assignment.

    For almost 50 years, our nation's health insurance industry has strived to mitigate ever increasing healthcare costs by negotiating discounted services with providers willing to participate in an insurer's preferred provider network. Ease and facility of direct payment by the insurance company to a provider is a substantial incentive for providers to discount their services and join a network. It is the anti-assignment provisions in plans such as those at issue in this case that allow insurers to provide direct payment to in-network providers while denying it to out-of-network providers such as Genesis. Plaintiff's reading of Lakeview would place Genesis on equal footing with in-network providers even though it refuses to discount its services and become a network provider. In the long run, a holding that dismantles the advantages of being an in-network provider will only increase healthcare costs for insureds, employees, and employers in this district. This

Court should decline the drastic expansion of the *Lakeview* holding sought by plaintiff in this case and enforce the anti-assignment provisions of the plans at issue.

## POINT III

### BCBSAL'S MOTION TO DISMISS AS TO CLAIMS COVERED BY THE SBP FEDERAL EMPLOYEE'S PROGRAM SHOULD BE DISMISSED AS UNOPPOSED

Plaintiff does not oppose BCBSAL's motion to dismiss as to the single claim under the Federal Employee's Service Benefit Plan ("SBP"). For the reasons set forth in BCBSAL's moving brief, this claim must be dismissed on sovereign immunity and preemption grounds. (*See* Moving Br. at Point IV, D.E. 15-2).

## POINT IV

### GENESIS' CLAIMS FOR ALLEGED UNDERPAYMENT OF BENEFITS UNDER THE INDIVIDUAL BLUE PRODUCT AND INDIVIDUAL BLUE PRODUCT 1500 PLANS MUST BE DISMISSED AND COMPELLED TO ARBITRATION

Genesis' only argument for the denial of BCBSAL's motion to dismiss as to the claims for alleged underpayment arising under the Individual Blue Product and Individual Blue Product 1500 Plans is that BCBSAL "fail[ed] to identify that there were indeed claims from those plans" and discovery should be permitted to resolve this factual dispute. (Pl. Br. at FN 2, D.E. 17). Plaintiff's argument is meritless. As set forth in Point I, *supra*, Plaintiff had an obligation under Rule 11 to identify the insurance plans under which their alleged underpayment claims are based. Had Plaintiff properly complied with Rule 11, it would have determined that there are a handful of claims which arise under the Individual Blue Product and Individual Blue Product 1500 plans. Indeed, in Ms. Parker's certification submitted in connection with BCBSAL's motion to dismiss she attests that there are claims at issue under the Individual Blue Product and Individual Blue Product 1500 Plans in this case which are subject to binding arbitration. (*See* Parker Cert. at ¶21,

6

D.E. 15-1). For the reasons set forth in BCBSAL's moving brief, the claims under these plans must be dismissed and compelled to arbitration. (*See* Moving Br. at Point V, D.E. 15-1).

## CONCLUSION

For all the foregoing reasons and the reasons set forth in BCBSAL's moving brief, BCBSAL respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys for Defendant*
*Blue Cross Blue Shield of Alabama*

By: s/Jennifer Pacicco, Esq.
Jennifer Pacicco, Esq.
Jocelyn A. Merced, Esq. (*admitted pro hac vice*)
Timothy A. Palmer, Esq. (*pro hac vice to be filed*)

Dated: June 24, 2024