IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC, doing business as "GENESIS DIAGNOSTICS," <br>         Plaintiff, <br><br>         v. <br><br> BLUE CROSS AND BLUE SHIELD OF ALABAMA, <br>         Defendant. | CIVIL ACTION <br><br><br><br> NO.  23-5132 |

**MEMORANDUM**

HODGE, J.                                                                                      May 27, 2026

Before the Court is Defendant Blue Cross Blue Shield of Alabama's ("BCBSAL") Motion to Dismiss the Second Amended Complaint filed by Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics ("Abira") (the "Motion") (ECF No. 35), the opposition thereto (ECF No. 40), and reply in support (ECF No. 43). For the following reasons, the Motion is granted in part and denied in part.

I.    **BACKGROUND**

    A.    **Factual Background**[1]

Taking the allegations in Abira's Second Amended Complaint as true, the facts are as follows.[2] At the time of the events underlying this litigation, Abira operated an out-of-network

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] With its Motion to Dismiss, BCBSAL attaches a declaration and ten exhibits containing excerpts from the Plans. The Court cannot consider the declaration in connection with a Rule 12(b)(6) motion. *See Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016). However, the Court can consider Exhibits 1–7 and 10 without converting the Motion into one for summary judgment because they are excerpts of Plans on which the Second Amended Complaint is based. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Abira does not challenge the authenticity of the exhibits, and both parties are in possession of all relevant Plans in this case due to the limited

medical testing laboratory in Langhorne, Pennsylvania. (ECF No. 34 ¶ 6.) It performed services including clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing at this facility. (*Id.* ¶ 8.) It performed these services for 155 patients based on a purported assignment of benefits stating as follows:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate[,] authorize[,] and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws.

(*Id.* ¶ 10.) Abira asserts that the 155 patients "executed or should have executed an assignment of benefits with respect to their original requisitions for services." (*Id.* ¶ 11.) BCBSAL failed to respond to claims submitted, or refused to make payment, to Abira. (*Id.* ¶ 13.)

The 155 patients were covered by the following Plans: Blue Advantage, BlueCard Host Plan, Board of Water and Sewer Comm. ERISA, Ascension Health ERISA, AL West Fl Conf of United Methodist ERISA, FEP, Xcel Staffing Inc. ERISA, JHCC Holdings LLC ERISA, and MOBIS ERISA (the "Plans"). (ECF No. 34 at 15–17 ("Exhibit 1").) Additionally, some patients are listed with plans that are unknown. (*Id.*)

### B.    Procedural History

Abira filed its initial complaint on December 27, 2023. (ECF No. 1.) After BCBSAL filed its first Motion to Dismiss (ECF No. 10), Abira filed its First Amended Complaint (ECF No. 12). BCBSAL again moved to dismiss. (ECF No. 15.) When the second motion to dismiss was fully

---

discovery undertaken prior to the Second Amended Complaint. However, the Court does not consider Exhibits 8 or 9, which relate to plans not explicitly mentioned in the Second Amended Complaint.

briefed, the Court ordered that Abira provide further information regarding the BCBSAL plans at issue in this case. (ECF No. 22.) Upon receiving no response to the Court's Order, the Court ordered Abira to show cause why it failed to comply. (ECF No. 23.) Based on Abira's response to the order to show cause, the Court ordered limited discovery between the parties to determine the BCBSAL plans at issue, which required Abira to provide certain information to BCBSAL, and for BCBSAL to provide all plan documents in connection with Abira's First Amended Complaint to Abira. (ECF No. 27.)

On December 17, 2025, Abira filed its Second Amended Complaint. (ECF No. 34.) In the Second Amended Complaint, Abira brings a claim under ERISA (Count 1), a breach of contract for the non-ERISA plans (Count 2), and a quantum meruit/unjust enrichment for non-ERISA plans (labeled as Count 4).[3] BCBSAL again moved to dismiss. (ECF No. 35.) After extensions in briefing for both parties, the Motion is now ripe.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] There is no Count 3 in the Second Amended Complaint.

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III.    DISCUSSION

### A.    ERISA Plans

Abira brings a claim under ERISA for alleged unpaid benefits arising from the following ERISA Plans: Board of Water and Sewer Commission, Ascension Health, Alabama West Florida Conference of United Methodist, Xcel Staffing Inc., JHHC Holdings LLC, and MOBIS (the "ERISA Plans"). Of the 155 patients listed in Exhibit 1 to the Second Amended Complaint, six are covered by the ERISA Plans.

#### 1.    Anti-Assignment Provisions in ERISA Plans

BCBSAL argues that Abira lacks derivative standing due to enforceable anti-assignment provisions in two of the ERISA Plans: JHCC Holdings LLC and MOBIS. "[W]hether a party has derivative standing to file an ERISA claim 'involves a merits-based determination,'" such that it is properly analyzed under Rule 12(b)(6). *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 62 n.1 (3d Cir. May 16, 2019).

ERISA authorizes suit by "participants" and "beneficiaries" of ERISA plans, but "health care providers may obtain standing to sue by assignment from a plan participant." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). "[A]nti-assignment clauses in

ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018).

Abira argues that the anti-assignment provisions are ambiguous because they relate to payments only and not litigation for wrongful denial of claims, and moreover that the provisions provide that payments will be made to the insured or the provider, even for out-of-network providers. (ECF No. 40 at 13–14.)

First, Abira's attempted distinction between an anti-assignment provision related to payments only as opposed to an anti-assignment provision for litigation of wrongful denial of claims is perplexing given that Abira's Second Amended Complaint asserts that Abira is rightfully entitled to payments because of these assignments. Abira is not seeking to vindicate some other right it claims to have been assigned. The anti-assignment provision explicitly prevents the assignment that Abira seeks to rely on. Abira cannot have it both ways.

Second, Abira's assertion that the provision states payments "will be made" (ECF No. 40 at 13) even for out-of-network providers is not supported by the provision itself. The anti-assignment provisions state: "we will not honor an assignment by you of payment of your claim to anyone. What this means is that we will pay covered benefits to you or your in-network provider (as required by our contract with your in-network provider) – even if you have assigned payment of your claim to someone else. With out-of-network providers, we may choose whether to pay you or the provider." (ECF No. 35-8 at 7; ECF No. 35-9 at 7.)

Abira then argues that BCBSAL waived the anti-assignment provision because BCBSAL made partial payments on some claims and never advised that the assignments were not acceptable.

(ECF No. 40 at 15–16.)[4] Under the language of the anti-assignment provision, it is contemplated that BCBSAL will not honor assignments but could choose to pay an out-of-network provider—though notably the latter provision does not depend on any potential assignment. But in this case, as another court recently noted, Abira does not suggest anything other than routine acts resulted in a waiver here, and the Third Circuit has explained that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal does not demonstrate 'an evidence purpose to surrender' an objection to a provider's standing in a federal lawsuit." *See Abira Med. Lab'ys LLC v. Meritain Health, Inc.*, No. CV 24-3140, 2026 WL 906677 (E.D. Pa. Mar. 30, 2026) (quoting *Am. Orthopedic*, 890 F.3d at 453).

Because the JHCC Holdings LLC ERISA and MOBIS ERISA plans contain anti-assignment provisions, Abira lacks derivative standing to pursue claims submitted in connection with those plans.

### 2.    Administrative Exhaustion

BCBSAL argues that the Plans provide a two-step process by which claims are decided and reviewed, which includes an appeals process that must be exhausted before a lawsuit is initiated. (ECF No. 35-1 at 20–21.) It asserts that it has not located a single instance where Abira has filed an administrative appeal for any of the claims at issue in this litigation, and moreover, never received nine of the claims which Abira asserts were underpaid. In response, Abira does not point to a single allegation in its Second Amended Complaint to support its contention that it adequately pled administrative exhaustion. Indeed, the word "exhaust" appears nowhere in the Second Amended Complaint.

---

[4] Moreover, this allegation is contradicted by the Second Amended Complaint's exhibit, which states that $0 were paid for each of the 155 claims on which this lawsuit is based. (ECF No. 34 at 15–17.)

All remaining ERISA Plans at issue except Xcel Staffing Inc.[5] contain administrative exhaustion requirements. (*See* ECF No. 35-4 at 3–4 (Alabama West Florida Conference of the United Methodist Church); ECF No. 35-5 at 3–5 (Ascension); ECF No. 35-6 at 3–4 (Board of Water and Sewer Commission).) An ERISA claim "is subject to dismissal if it does not plead or otherwise deal with the issue of exhaustion." *Schirmer v. Principal Life Ins. Co.*, No. 08-cv-2406, 2008 WL 4787568, at *3 (E.D. Pa. Oct. 29, 2008) (quoting *Balmat v. CertainTeed Corp.*, No. Civ. A. 04-2505, 2004 WL 2861873, at *3 (E.D. Pa. Dec. 9, 2004)); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."). Abira's allegations that it "performed all of its obligations under those contract(s)" (ECF No. 34 ¶ 25) is insufficient to meet this threshold. *See Schirmer*, 2008 WL 4787568, at *3. Nor has Abira alleged a "clear and positive showing" that the administrative process would be futile. *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249–50 (3d Cir. 2002). Abira urges the Court not to conclude that it has failed to exhaust its administrative remedies—but in the absence of any allegations that it *has* exhausted its administrative remedies required under the Plans, the Court is unable to conclude that Abira sufficiently pled exhaustion. The ERISA claim therefore must be dismissed without prejudice for claims arising from the Board of Water and Sewer Commission ERISA, Ascension Health ERISA, and Alabama West Florida Conference of United Methodist ERISA.[6]

---

[5] At this stage, without the underlying plan documents, the Court is not able to conclude that the Xcel Staffing Inc. ERISA plan contains administrative remedies.

[6] To the extent that the Xcel Staffing Plan contains administrative remedies, Abira is similarly required to exhaust those remedies before the Court can entertain the claim.

B.    **Non-ERISA Plans**

The remaining 149 patients listed in Exhibit 1 are covered by the following non-ERISA Plans: Blue Advantage, BlueCard Host Plan, and FEP. Six patients are covered by unknown plans.

1.    **Medicare Advantage Plan**

BCBSAL argues that claims under the Blue Advantage Plan, which is a Medicare Advantage Plan,[7] must be dismissed because they are preempted by the Medicare Act and Abira failed to exhaust the Medicare Act's mandatory administrative remedies. Abira suggests that this argument is premature because "this provision [] is facially broad and contains no explicit limitations on the type of actor bringing suit." (ECF No. 40 at 18.)

The *Meritain* court also addressed this argument in depth. It noted that a party seeking judicial review of a dispute involving a claim under the Medicare Act must first exhaust a four-level administrative review process. 2026 WL 906677 at *5 (citing *Heckler v. Ringer*, 466 U.S. 602, 606 (1984); *Nationwide Ambulance Servs., Inc. v. Safeguard Servs., LLC*, No. 11-5213, 2011 WL 4753415, at *2 (D.N.J. Oct. 7, 2011)). Jurisdiction "'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review," *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1111 (9th Cir. 2003). Because the *Meritain* court found that Abira's state law claims were inextricably intertwined with a claim for Medicare benefits, it held that Abira was required to satisfy the administration exhaustion requirements as a jurisdictional prerequisite. *See* 2026 WL 906677 at *6.

Similarly, here Abira's state law claims assert that BCBSAL improperly denied or underpaid claims for services provided to a Medicare beneficiary, and that Abira was entitled to

_____

[7] *See* BlueCross BlueShield of Alabama, Blue Advantage, https://www.bcbsalmedicare.com/sales/web/medicare/blueadvantage-overview (last visited May 27, 2026).

compensation for services it provided to Medicare beneficiaries. The claims therefore "arise under" the Medicare Act and require administrative exhaustion prior to seeking judicial review. *See id.* Abira has not alleged any efforts to exhaust its administrative remedies. It therefore cannot state a claim based on claims related to the Blue Advantage Plan without alleging administrative exhaustion.

### C.   FEP

One of the 155 patients in Exhibit 1 was covered under FEP. FEP is a Federal Employees Health Benefits Plan, established under the Federal Employees Health Benefits Act ("FEHBA"), which the Office of Personnel Management ("OPM") has authorized BCBSAL to administer. (ECF No. 35-12 at 2–3.) FEHBA contains a preemption clause which provides:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). Courts have found FEHBA employee claims of breach of contract are preempted under this provision. *See Pellicano v. Blue Cross Blue Shield Ass'n*, No. CIV.A. 11-406, 2012 WL 1828027, at *5 (M.D. Pa. May 18, 2012), *aff'd*, 540 F. App'x 95 (3d Cir. 2013) (collecting cases).

Abira asserts that courts have held that there is no preemption on disputes between carriers and health care providers. (ECF No. 40 at 19.) For instance, Abira points to *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972 (9th Cir. 2007), which held that claims including breach of contract brought by a health provider against a FEHBA plan were not preempted. The Ninth Circuit found that, unlike claims brought by covered individuals, claims brought by health providers were not displaced by FEHBA's administrative dispute mechanism. *Id.* at 976. However, the court also noted that FEHBA regulations permit "other individuals or

9

entities" to pursue claims administratively on behalf of a covered individual. *Id.* Because the plaintiff in that case had no assignment from the covered individual to pursue payment of a disputed claim, but instead sought to recover money "on its own behalf pursuant to its contract with a carrier," it was not acting on behalf of a covered individual and thus was not able to invoke the administrative review process. *Id.*

Unlike the plaintiff in *Cedars-Sinai*, Abira's claim is based on derivative standing arising from an assignment. Under Pennsylvania law,[8] where an assignment is effective, "the assignee stands in the shoes of the assignor and assumes all of his rights." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997) (collecting cases). Among the rights possessed by the assignee are the remedies the assignor once possessed. *Id.* at 1172. Pursuant to the alleged assignment Abira stands in the shoes of the FEHBA employee in bringing its breach of contract claim. Such a claim is preempted under the FEHBA.

### D.      State Law Claims

#### 1.      Breach of Contract

Out-of-network providers, like Abira, do not have pre-existing contractual relationships with the insurer. Absent a separate agreement, there is no obligation for the provider to provide services to plan participants, no obligation for the insurer to pay the providers for services, and no agreement that compensation is limited to benefits under the plan. *See Plastic Surgery Ctr., P.A.*

---

[8] Neither party addresses which state law applies to the state law claims. However, both parties cite to Pennsylvania law. Because this is a diversity case, this Court applies the forum state's choice of law rules. *Zanitech v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 140 (3d Cir. 2024). Pennsylvania courts apply a flexible "interest/contacts" methodology to contract choice of law questions. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226–27 (3d Cir. 2007). Under this approach, the law of the forum with the "most interest in the problem" applies. *Id.* at 227–28. Pennsylvania law properly applies because the laboratory services were rendered in Pennsylvania, the alleged payments were to be made for these services performed in Pennsylvania, and thus the injury occurred in Pennsylvania.

*v. Aetna Life Ins. Co.*, 967 F.3d 218, 231 (3d Cir. 2020). Abira asserts that each of the patients it submitted a claim on behalf of executed or should have executed an assignment of benefits and thereby created an assignment of contractual rights. (ECF No. 34 ¶ 11.)

To state a claim for breach of contract under Pennsylvania law, a party must allege: (1) the existence of a contract; (2) breach of the contract; and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Abira asserts that "by virtue of the patients' execution(s) of their respective assignment of benefits on the requisition of services forms submitted to the Plaintiff," contractual obligations arose between Abira and BCBSAL. (ECF No. 34 ¶ 12.)

A contract that should have been signed, but was not, is not an enforceable contract. If it were enforceable and under such reasoning, a party could seek to enforce a contract that was almost entered into, but a party ultimately opted not to sign. Here, Abira alleges that all 155 patients "executed or should have executed an assignment of benefits." (*Id.* ¶ 11.) A legally significant distinction exists between whether assignments were executed or if they merely should have been executed. Abira cannot maintain a breach of contract claim based on an unexecuted contract. While there are other assertions that the 155 patients executed an assignment of benefits, the Court cannot accept contradictions within the Second Amended Complaint as true. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss . . . that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'") (collecting cases). Abira therefore has not alleged the existence of a contract and cannot maintain a breach of contract claim.

In its opposition, Abira argues that an implied contract can be inferred from the parties' conduct. However, the Second Amended Complaint is devoid of any allegations that its breach of contract claim is based on a contract implied by course of conduct. Rather, the Second Amended Complaint alleges a course of conduct of BCBSAL not paying for any of the 155 claims submitted to it. Abira therefore cannot resuscitate its breach of contract claim based on the parties' course of conduct.

The Court thus dismisses the claim for breach of contract. Because amendment is not futile, the Court dismisses this claim without prejudice.

### 2.    Quantum Meruit/Unjust Enrichment

The Pennsylvania Supreme Court has stated that a "claim for damages in quantum meruit is fundamentally an equitable claim for unjust enrichment." *Meyer*, 179 A.3d at 1102. A party seeking recovery must demonstrate: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Id.*

Whether retention of the benefit would be inequitable is the "most critical element" of a claim for unjust enrichment. *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 917 (Pa. Super. Ct. 2017). A "mere failure of performance" is not enough to give rise to a claim for unjust enrichment. *D.A. Hill Co. v. Clevetrust Realty Invs.*, 573 A.2d 1005, 1009 (Pa. 1990). Where the enriched party has misled the conferring party, unjust enrichment may arise. *Id.*

Abira points to two courts in this district which have found that it sufficiently pled a claim for unjust enrichment. *Abira Med. Lab'ys, LLC v. Centene Corp.*, No. CV 23-5057, 2024 WL 3792224 (E.D. Pa. Aug. 13, 2024); *Abira Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-*

*Atl. States, Inc.*, No. 24-CV-759, 2024 WL 2188911 (E.D. Pa. May 15, 2024). The *Centene* court found unjust enrichment adequately pled where it alleged benefits conferred in combination with allegations of "misrepresentations and false promises regarding paying for their laboratory testing, and knew that such would not be honored." 2024 WL 3792224, at *6. The *Kaiser* court found unjust enrichment adequately pled where it alleged benefits conferred and that Kaiser misled it through "a long campaign designed to deprive [Abira] of thousands of dollars." 2024 WL 2188911, at *9.

Allegations such as those in *Centene* are absent from this case. While allegations such as those in *Kaiser* are present here, the Court finds that the allegation of "a long campaign designed to deprive" Abira of money, that is unsupported by allegations supporting that BCBSAL's refusal to pay was its effort to mislead Abira, to be conclusory. Rather, the exhibit to the Second Amended Complaint asserts that BCBSAL paid $0 towards any of the claims for the 155 patients. Such nonpayment and alleged nonresponses to some claims contradict any assertion of a deceptive campaign employed by BCBSAL. As noted above, the Court cannot accept contradictory allegations as true. Abira therefore has not adequately pled a claim for quantum meruit/unjust enrichment. Because amendment is not futile, the Court dismisses this claim without prejudice.

IV.    **CONCLUSION**

For the foregoing reasons, the Motion is granted as to Counts 2 and 4. The Motion is granted as to Count 1 for all claims under ERISA Plans with the exception of the single claim under the Xcel Staffing Inc. ERISA Plan. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

HODGE, KELLEY B., J.

13